IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| IN RE | ) | |
| | ) | |
| CHARLES W. KENNEDY, JR. and | ) | CASE NO. 06-30157-H3-13 |
| MARY D. KENNEDY, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held a hearing on the "Application to Authorize Sale of Real Estate and Place Funds in Registry of Court" (Docket No. 43) filed by the Chapter 13 Trustee and the "Debtors' Motion to Abstain from Asserting Jurisdiction" (Docket No. 48). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Charles W. Kennedy, Jr. and Mary D. Kennedy ("Debtors")[1] filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 12, 2006. William E. Heitkamp is the Chapter 13 Trustee.

---

[1]In this opinion, when the word "Debtor" is used in its singular form, it refers to Charles W. Kennedy, Jr.

On February 15, 1974, Brazoria 30 Limited Partnership ("Brazoria 30") was formed, with Fred Earhart III serving as the general partner, and seventeen individuals serving as limited partners.  The partnership agreement did not assign an ownership interest in the partnership to Earhart, as the general partner. The partnership agreement provided for the establishment of a real estate listing agreement under which First National Property Corp. ("FNPC") would earn a commission upon sale of partnership property.  The partnership agreement further provided that, if the property was sold or condemned, FNPC would be entitled to a portion of the net gain or income from the property.  The partnership agreement further provided that the general partner may not, without the unanimous written consent of all the limited partners, sell or assign his interest in the partnership.  The partnership agreement provided that the partnership was to terminate on January 15, 1999.  (Debtors' Exhibit 3).

Debtor testified that Earhart owned 100 percent of FNPC.

Prior to 1974, William J. Wise, purportedly acting as a trustee, acquired a tract of approximately 29.9 acres of real property located in Brazoria County, Texas.  (Debtors' Exhibit 9).  On May 17, 1974, Wise, purportedly acting as trustee, executed a conveyance of the property to "Fred Earhart, III, Trustee."  The 1974 conveyance from Wise to Earhart does not

2

identify for whose benefit either was purportedly serving as
trustee.   The conveyance describes a "Wrap-Around Promissory
Note" purportedly secured by a deed of trust in favor of "Charles
W. Kennedy, Jr., Trustee."  (Debtors' Exhibit 2).  The purported
deed of trust is not in evidence.

On July 20, 1978, Earhart executed a conveyance of the
property to "Charles W. Kennedy, Jr., Trustee."  The 1978
conveyance from Earhart to Debtor does not identify for whose
benefit either was purportedly serving as trustee.  (Debtors'
Exhibit 1).

Debtor testified that it is his belief that Earhart
took title to the property as trustee for Brazoria 30.  He
testified that Earhart requested capital contributions from the
limited partners of Brazoria 30, in order to repay the Wrap-
Around Promissory Note.  He testified that the note was paid in
full in 1982.

Debtor testified that Earhart died on May 4, 1999.  He
testified that, one week before Earhart's death, Earhart
conducted a shareholder's meeting of FNPC, and appointed Debtor
as president and director of FNPC.

Debtor testified that he is an attorney.  He testified
that Earhart was his client.  He testified that Earhart's estate
has been admitted to probate.  He testified that he has been
appointed as the personal representative and independent executor

3

of Earhart's probate estate.

Debtor testified that, after Earhart's death, he performed the duties which Earhart had performed prior to Earhart's death, including managing and marketing the property.[2] He testified that he negotiated a sale of the property to Paul W. Grohman, for $749,250.  He testified that, although he is not a general partner or limited partner of Brazoria 30, he managed Brazoria 30 after Earhart's death.

Debtor testified that he believes he is entitled to a six percent attorney fee as a commission.

On January 12, 2006, the date on which Debtors' Chapter 13 petition was filed, Debtors filed schedules and a statement of financial affairs.  Although Debtor took title to the property, Debtors' schedule A does not list an interest in the property. Debtors' schedule B does not list an interest in any fee asserted to be owed to Debtor.  Debtors' statement of financial affairs does not list the property as "property owned by another person that the debtor owns or controls."  Debtors' statement of financial affairs does not disclose Debtor's service as director of FNPC, the financial interest he appears to have in FNPC, or his role as executor of Earhart's probate estate.  (Docket No.

---

[2]Debtor also testified that there were other properties as to which FNPC had a management role that he has managed after Earhart's death.  There is no evidence as to whether Debtor holds legal title to any of these properties.

1).

        On March 31, 2006, Debtors filed a plan, proposing to

pay a total of $130,400 to the Chapter 13 Trustee over 60 months,

for distribution to the listed creditors of the bankruptcy

estate.   Debtors proposed to pay two claims secured by their home

and three claims secured by two vehicles directly to the lender,

and to pay through the Chapter 13 Trustee $107,251.86 to the

Internal Revenue Service, and $2,710.90 in priority claims for ad

valorem real property taxes and Chapter 13 attorney fees.

Debtors proposed to provide $7,397.24 to unsecured creditors.[3]

The plan was confirmed by order entered April 28, 2006 (Docket

No. 31).

        On June 6, 2006, Debtor instructed the title company as

to disposition of the sale proceeds upon closing of the sale.   He

instructed the title company to pay $617,172.71 to a bank

account, and to pay $82,302.29 to another bank account.

(Trustee's Exhibit 6).   Debtor testified that the account to

which $617,172.71 was to be transferred is an account he holds at

Chase Bank as trustee for Brazoria 30.   He testified that the

account to which $82,302.29 was to be transferred is an account

he holds at Chase Bank for use of his law office.   He testified

that the first account was not disclosed in his schedules, and

---

        [3]The court notes that this amount is sufficient to pay all
scheduled unsecured claims in full.

that the second account was disclosed in his schedules.  The

letter also directed the title company to pay $44,976.00 to a

third account.  (Trustee's Exhibit 6).  Debtor testified that the

third account is one he opened after the filing of the petition

in the instant Chapter 13 case.

On August 1, 2006, the Chapter 13 Trustee filed the

instant motion for approval of the sale.  The Chapter 13 Trustee

seeks an order allowing the sale, but directing the proceeds of

sale into this court's registry, pending a determination of

entitlement to the funds.  The Chapter 13 Trustee asserts that

the creditors of the bankruptcy estate are entitled to the funds.

On August 18, 2006, Debtor, FNPC, and Brazoria 30 (each

of which was controlled by Debtor) filed suit in the 239th

Judicial District Court of Brazoria County, Texas, against

American Title Co. of Houston, GR-M1, Ltd. (purportedly the

assignee of Grohman's interest under the sale contract), and the

limited partners of Brazoria 30, seeking a declaratory judgment

determining the sale to be valid, and determining the

distribution of proceeds from the sale.  The attorney for the

plaintiffs in that suit is Anne E. Kennedy, who is Debtors'

daughter.[4]  Although the Chapter 13 Trustee had asserted an

---

[4]The court notes that Suzanne S. Chapman and Philip G.
Chapman filed a motion for relief from stay (which has since been
withdrawn) in which they assert, inter alia, that Earhart
transferred all of part of his ownership of FNPC to two of
Debtor's daughters.  Debtor testified that the shares of FNPC are

interest in the proceeds of sale, the plaintiffs in the state court suit did not name the Chapter 13 trustee as a defendant.

On August 23, 2006, Debtors filed the instant motion to abstain, arguing that the property is excluded from Debtors' bankruptcy estate pursuant to Section 541 of the Bankruptcy Code, and asserting that the suit they had filed five days earlier in the 239th Judicial District Court of Brazoria County, Texas, was the proper forum in which to resolve the disputes among the parties.

## Conclusions of Law

Section 541(a)(1) of the Bankruptcy Code creates an estate, comprised of all legal and equitable interests of the debtor in property as of the commencement of the case.  Under Section 541(b)(1) of the Bankruptcy Code, any power that the debtor may exercise solely for the benefit of an entity other than the debtor is excepted from property of the estate.  Section 541(d) of the Bankruptcy Code provides that property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, becomes property of the estate only to the extent of the debtor's legal title, but not to the extent of the equitable interest that the debtor does not hold.

---

owned by Earhart's probate estate.  It is not clear whether the Chapmans' assertion is true, and whether, if it is true, Anne E. Kennedy is one of the daughters who received such an assignment.

Honesty and full disclosure are most basic hallmarks of a good faith showing on the part of a Chapter 13 debtor.   A debtor's schedules must disclose all property in which a debtor owns an interest, whether legal or equitable, and whether property of the estate, or not.  See e.g. In re Williams, 338 B.R. 678 (Bankr. E.D. Va. 2004).

In the instant case, at a minimum, the Debtor asserts an interest in the proceeds of the proposed sale, to pay legal fees he asserts are owed to him.  That asserted right to payment should have been disclosed in the schedules, and such disclosure might conceivably have affected, inter alia, the requirement that the court find the debtor's good faith in order to confirm a Chapter 13 plan.  Based on this asserted, and undisclosed, interest in the proceeds of the proposed sale, Debtors must amend the schedules and statement of financial affairs to reflect any asserted interests (including any interests Debtors may assert in property other than that described in the instant motion to sell).  The court requests that, in light of the deadline to seek revocation of confirmation of the plan, the United States Trustee and the Chapter 13 Trustee review the amended schedules instanter, and take such action as they believe necessary.  The court concludes that the motion to abstain should be denied.

8

With respect to the proposed sale, under Section 363(b)(1) of the Bankruptcy Code, after notice and a hearing, the court may approve a proposed sale of property of the estate.

In the instant case, the hearing held on the instant motion to sell raises more questions than it answers, and appears, as the dispute is currently framed, to present a likely outcome of piecemeal resolution of the question of whether the Debtor's interest in the property is in fact property of the estate.  The court finds troubling that Debtor has apparently assumed that he is the responsible manager of Brazoria 30, and that he is responsible for allocating the proceeds among competing entities, including several of those in which he or his family members may possess a previously undisclosed interest.  No party has sought lifting of the automatic stay in order to seek resolution of the underlying disputes among the parties, and no party has sought to remove the disputes to this court.  The Chapter 13 Trustee seeks that the court approve the sale, and hold the proceeds pending some resolution of entitlement thereto. However, such a proceeding is not presently pending, and this court must resolve such a proceeding before determining whether this court has jurisdiction to approve such a sale.  The court

concludes that the instant motion to sell should be denied

without prejudice.

Based on the foregoing, a separate conforming Judgment

will be entered.

Signed at Houston, Texas on this 22nd day of September,

2006.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

10